**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Case No. 23-cv-02728-REB

DALILA DEKOVIC, and
ALEJANDRO JIMENEZ RAMIREZ,

      Plaintiffs,

v.

TRACY TARANGO, Acting Director, California Service Center, U.S. Citizenship and
Immigration Services,
MERRICK GARLAND, Attorney General,
UR MENDOZA JADDOU, Director, U.S. Citizenship and Immigration Services,
ANTONY J. BLINKEN, Secretary of State,

      Defendants.

---

**OPINION AND ORDER**

---

**Blackburn, J.**

      This matter is before the court on **Plaintiff's Motion for Summary Judgment
on Administrative Procedure Claims and Request for Oral Argument** [#29][1] filed

November 27, 2023.  The defendants filed a response [#34], and both the plaintiffs and

the defendants filed notices of supplemental authority [#35, #36].

      Dalila Dekovic filed an I-130 petition for a visa for her son, Alejandro Jimenez

Ramirez.  At the time, Ms. Dekovic was a lawful permanent resident (LPR) of the United

States.  The petition was approved by the U.S. Citizenship and Immigration Services

---

[1] "[#29]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

(USCIS).  The petition and Mr. Jimenez were classified in the relatively favorable F2A visa category.  Ms. Dekovic and Mr. Jimenez awaited the availability of a visa in the F2A category.

Before such a visa became available, Ms. Dekovic became a naturalized U.S. citizen.  As a result of that change in the status of Ms. Dekovic, the National Visa Center (NVC) re-classified the petition and Mr. Jimenez into the significantly less favorable F1 visa category.  Ms. Dekovic and Mr. Jimenez challenge that re-classification.  The defendants contend the re-classification is required by 8 U.S.C. § 1151(f)(2).  After reviewing the briefs, the record provided by the parties, and the applicable law, I affirm the decision of the defendants.

## I.  JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), in combination with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (review of final agency action).

## II.  BACKGROUND

On December 15, 2017, Ms. Dekovic filed a Form I-130 Petition for Alien Relative on behalf of her son, Mr. Jimenez.  *Declaration of Maylene R. Gutierrez* [#32-1] (Gutierrez Decl.),  ¶ 6.  At that time, Ms. Dekovic was an lawful permanent resident (LPR), not a naturalized U.S. citizen.  *Id*.  Mr. Jimenez was 20 years old.  The petition was approved.  When the petition was approved, Mr. Jimenez was classified as the unmarried child of a LPR in the F2A visa category. *Gutierrez Decl*. [#32-1], ¶ 8.

On April 2, 2021,Ms. Dekovic became a naturalized U.S. citizen.  *Declaration of Rebecca M. Austin* [#32-2] (Austin Decl.),  ¶ 3.  On April 2, 2021, Mr. Jimenez was

more than 21 years old.  As a result, the National Visa Center (NVC) determined Mr. Jimenez was no longer the child of a LPR in the F2A visa category.  The NVC reclassified him as an unmarried son of a U.S. citizen in the F1 visa category.  *Id*. at ¶ 4.  As discussed further below, the F1 visa category is significantly less favorable than the F2A category.

The plaintiffs claim the NVC improperly reclassified Mr. Jiminez in the F1 visa category.  They claim Mr. Jimenez should have been reclassified in the IR (immediate relatives) visa category, a category which includes unmarried children under age 21 of U.S. citizens, when his mother became a U.S. citizen.  According to the plaintiffs, the Child Status Protection Act (CSPA), Pub. L. No. 107-208, 116 Stat. 927,  requires that Mr. Jimenez be classified in the IR visa category.

The plaintiffs rely on provisions of the CSPA codified at 8 U.S.C. § 1151(f)(2), which addresses the age of a child on the date the parent of a child is naturalized as a U.S. citizen.  Under § 1151(f)(2), a petition by a LPR for a visa for a child under 21 converts to a petition to classify the child as an immediate relative when the LPR parent becomes a naturalized as a U.S. citizen.  The plaintiffs contend that, in determining the age of a child under § 1151(f)(2), the NVA and the court must apply the age calculus stated in § 1153(h)(1).  The § 1153(h)(1) calculus determines the age of an alien using the age of the alien on the date on which an immigrant visa number becomes available for that alien reduced by the number of days during which the visa petition was pending.

The defendants contend the age calculus of § 1153(h)(1) is not applicable to the visa classification of Mr. Jimenez under § 1151(f)(2).  Rather, the defendants contend the chronological age of Mr. Jimenez on the day his mother was naturalized as a U.S.

citizen is the relevant age for the purpose of the visa classification of Mr. Jimenez under § 1151(f)(2). As reflected in **Matter of Daniel Edgar Zamora-molina, Respondent**, 25 I. & N. Dec. 606, 607, 2011 WL 4730139 (BIA 2011), this is the stated position of the Board of Immigration Appeals.

The parties have not filed an administrative record.  However, the parties have agreed on the relevant facts.  *Proposed Joint Case Management Plan* [#32], p. 3. Further, attached to the Proposed Joint Case Management Plan [#32] are exhibits which document the facts to which the parties have effectively stipulated.  Correctly, the parties say this case presents solely a question of law.  Specifically, this case turns on the interpretation of the phrase "the age of the alien on the date of the parent's naturalization," as that phrase is used in § 1151(f)(2) and was applied to Mr. Jimenez.

### III.  STANDARD OF REVIEW

The APA provides that a reviewing court shall set aside agency action if it is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "A presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action." **Citizens' Comm. to Save Our Canyons v. Krueger**, 513 F.3d 1169, 1176 (10th Cir. 2008) (citation and internal quotation marks omitted).

> In determining whether the agency acted in an arbitrary and capricious manner, we must ensure that the agency decision was based on a consideration of the relevant factors and examine whether there has been a clear error of judgment.  Generally, an agency decision will be considered arbitrary and capricious if the agency had relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Friends of the Bow v. Thompson*, 124 F.3d 1210, 1215 (10th Cir. 1997) (citations and internal quotation marks omitted).  A reviewing court should engage in a "thorough, probing, in-depth review."  *Wyoming v. United States*, 279 F.3d 1214, 1238 (10th Cir. 2002) (citation omitted).  However, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Recently, the Supreme Court of the United States overruled the longstanding precedent *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984).  *Chevron* concerned deference by courts to the permissible construction of a statute by an administrative agency.  In *Loper Bright Enterprises, et al. v. Gina Raimondo*, ___ U.S. ___, 144 S. Ct. 244 (2024), the court overruled *Chevron* and said "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."  *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, ___, 144 S.Ct. 2244, 2273 ( 2024).

## IV.  ANALYSIS

### A.  FINAL AGENCY ACTION

The defendants contend the plaintiffs are not entitled to review under the Administrative Procedure Act (APA) because the plaintiffs are not challenging a final agency action.  Generally, two conditions must be satisfied for an agency action to be "final." First, the action must mark the consummation of the agency's decision making process on the issue.  It must not be of a tentative or interlocutory nature.  Second, the action must be one by which "rights or obligations have been determined," or from

which "legal consequences will flow." ***Bennett v. Spear***, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted).

According to the defendants, approval by the U.S. Citizenship and Immigration Services (USCIS) of a visa petition does not result in a visa. Rather, it results in getting a place in line to apply for a visa later. Because no visa has been issued or denied to Mr. Jimenez, the defendants argue, no agency has rendered its last word on the issue. I disagree.

As detailed below, the NVC has rendered its final decision on which visa category the petition of Ms. Dekovic and its beneficiary, Mr. Jimenez, will be placed. That decision is one which determines the rights and obligations of the parties as Ms. Dekovic and Mr. Jimenez await consideration for a visa for Mr. Jimenez. As this process currently is postured, that wait likely will continue for years. On the issue of visa classification, the decision of the NVC, a creature of the United States Department of State, is a final agency action.

## B. STANDING

The defendants argue the plaintiffs do not have standing to sue certain of the defendants. This is true, the defendants assert, because the allegations in the complaint do not show that the plaintiffs have suffered or will imminently suffer an injury in fact caused by certain of the defendants, which injury would be redressed by a favorable decision from this court. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560 (1992).

The injury claimed here is not the grant of the petition of Ms. Dekovic seeking a visa for Mr. Jimenez. As to both plaintiffs, the grant of that petition is a positive not a

negative.  Rather, the injury at issue here is the re-classification of the application from one visa category to another based on the fact that Ms. Dekovic became a naturalized U.S. citizen.  As described in the operative complaint, the **Second Amended Complaint for Declaratory and Injunctive Relief** [#28] (Complaint), the USCIS California Service Center approved the petition of Ms. Dekovic.  *Complaint*, ¶ 27.  While Ms. Dekovic and Mr. Jimenez awaited the availability of a F2A visa, based on the approved petition, Ms. Dekovic became a naturalized U.S. citizen. As a result, according to the Complaint [#28], the Department of State and the National Visa Center (NVC) re-classified the petition and Mr. Jimenez into the F1 visa category. *Complaint*, ¶¶ 30, 33, 36.  The re-classification of the petition and Mr. Jimenez by the Department of State and the NVC is the cause of the injuries alleged by the plaintiffs.

Given these allegations, I find the plaintiffs do not have standing to assert their claims against the defendants from the Department of Homeland Security.  Those defendants are Alejandro Mayorkas, Secretary of Homeland Security, Ur Mendoza Jaddou, the Director of the USCIS, and Tracy Tarango, the Acting Director of the USCIS California Service Center. The allegations in the Complaint give no indication these defendants played any role in the re-classification of the petition and Mr. Jimenez to the F1 visa category by the Department of State and the NVC.  Similarly, the plaintiffs do not have standing to assert their claims against Merrick B. Garland, the Attorney General of the United States.  The allegations in the Complaint concerning Mr. Garland give no indication that the Attorney General or the Department of Justice played any role in the re-classification of the petition and Mr. Jimenez to the F1 visa category by the Department of State and the NVC.  For each and all of these

defendants, the allegations in the complaint do not show that the plaintiffs have suffered or will imminently suffer an injury in fact caused by these defendants. The claims against these defendants must be dismissed for lack of standing.

On the other hand, the plaintiffs allege the National Visa Center (NVC), a creature of the Department of State, improperly re-classified the petition and Mr. Jimenez, causing injury to the plaintiffs. The plaintiffs have standing to assert their claims against these defendants.

### C.  STATUTORY ANALYSIS

Four types of family visas provide helpful context in this appeal:

• IR (Immediate-relative) visa: for minor (under 21) sons and daughters of citizens.

• F1 visa: for adult (21 or over) sons and daughters of citizens.

• F2A visa: for minor (under 21) sons and daughters of LPRs.

• F2B visa: for adult (21 or over) sons and daughters of LPRs.[2]

The path to a family immigrant visa begins when a sponsoring LPR or U.S. citizen files a petition on behalf of a foreign relative, who is termed the principal beneficiary. The sponsor must provide USCIS with evidence showing, among other things, that the sponsor has the necessary familial relationship with the beneficiary, and that the sponsor has not committed any conduct disqualifying the sponsor from sponsoring an alien for a visa. USCIS reviews the petition and, if it meets all requirements, approves the petition. This helpful summary of the process is found in ***Scialabba v. Cuellar de***

---

[2]  § 1151(b)(2)(A)(i) (immediate-relative visas); § 1153(a)(1) (F1 visas); § 1153(a)(2)(A) (F2A visas); § 1153(a)(2)(B) (F2B visas).

*Osorio*, 573 U.S. 41, 47–48 (2014).

In the F1, F2A, and F2B visa categories, approval of a petition results not in getting a visa then and there.  Rather, the beneficiary of the petition gets a place in line. The law caps the number of visas issued each year in these and other family preference categories.  In these visa categories, demand regularly exceeds supply. As a consequence, the beneficiary of an approved petition in the F1, F2A, and F2B visa categories is placed in a queue with others in that category.  Each beneficiary in the category is assigned a "priority date" based on the date a petition was filed with USCIS. Often, these cues are years long.

In contrast, beneficiaries in the IR visa category can apply for and receive a visa as soon as a sponsoring petition is approved.  Again, the IR visa category limited to minor (under 21) sons and daughters of U.S. citizens.  Visas in the IR visa category are not subject to numerical caps.  *Cuthill v. Blinken*, 990 F.3d 272, 274 (2nd Cir. 2021).

For the purpose of a visa application in this context, being considered to be under 21 is very important.  As noted, the minor son or daughter of a U.S. citizen, the IR visa category, can obtain an immediate-relative visa shortly after the petition is approved.  A minor son or daughter of a LPR can wait in the "relatively short (and sometimes nonexistent)" F2A queue.  *Cuthill*, 990 F.3d at 275.  Adult sons or daughters must wait in the F1 or F2B cues, which often are much longer.  For example, in January 2021, the F1 visa cue was over six years long and the F2B visa cue was over five years long.  *Cuthill v. Blinken*, 990 F.3d 272, 275 (2nd Cir. 2021).

When the petition of Ms. Dekovic was approved, Mr. Jimenez was classified properly as the unmarried child of a LPR in the F2A visa category. He was placed in the

relatively short F2A visa cue with a priority date of December 15, 2017, the date the petition was filed.  When Ms. Dekovic became a naturalized U.S. citizen on April 2, 2021, Mr. Jimenez was classified in the F1 visa category and was placed in the typically much longer F1 cue.  In this sense, the naturalization of Ms. Dekovic prejudiced Mr. Jiminez.

Now, we enter the statutory weeds.  When Ms. Dekovic became a naturalized U.S. citizen on April 2, 2021, the provisions of § 1151(f)(2) were triggered.  Section 1151(f)(1) & (2) provides:

> **(f) Rules for determining whether certain aliens are immediate relatives**
>
> **(1) Age on petition filing date**
>
> Except as provided in paragraphs (2) and (3), for purposes of subsection (b)(2)(A)(I) - [which defines the term immediate relative] -, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title - [which says "The term 'child' means an unmarried person under twenty-one years of age"] - shall be made using the age of the alien on the date on which the petition is filed with the Attorney General under section 1154 of this title to classify the alien as an immediate relative under subsection (b)(2)(A)(I).
>
> **(2) Age on parent's naturalization date**
>
> In the case of a petition under section 1154 of this title initially filed for an alien child's classification as a family-sponsored immigrant under section 1153(a)(2)(A) of this title, based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination described in paragraph (1) shall be made using the **age of the alien on the date of the parent's naturalization**.

8 U.S.C. § 1151(f)(1) & (2) (emphasis added).  The final phrase in bold, above, is the key phrase at issue here.

As noted previously, the plaintiffs contend that, in determining the "age of the alien on the date of the parent's naturalization" under § 1151(f)(2), the age calculus stated in § 1153(h)(1) must be applied.  The § 1153(h)(1) calculus determines the age of an alien using the age of the alien on the date on which an immigrant visa number becomes available for that alien reduced by the number of days during which the visa petition was pending.  Section 1153(h)(1) provides:

**(h) Rules for determining whether certain aliens are children**

**(1) In general**

For purposes of subsections (a)(2)(A) and (d), a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title - [which says "The term 'child' means an unmarried person under twenty-one years of age"] - shall be made using–

(A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d), the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability;
reduced by

(B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

Even though § 1151(f)(2) does not refer to § 1153(h)(1) as a criteria to be considered to determine "the age of the alien on the date of the parent's naturalization," the plaintiffs contend the purpose and structure of the CSPA mandate such an interpretation of § 1151(f)(2).  Similarly, § 1153(h)(1) does not refer to § 1151(f)(2).

In *King v. Burwell*, 576 U.S. 473 (2015), the Supreme Court of the United States summarized the cannons of statutory interpretation.  If the statutory language is plain, it must be enforced according to its terms.  Often, the meaning or ambiguity of

certain words or phrases may only become evident when placed in context. When deciding whether statutory language is plain, a court must read the words in their context and with a view to their place in the overall statutory scheme. The duty of a court construing a statute is "to construe statutes, not isolated provisions" of statutes. *Id*., p. 486 (quoting ***Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson***, 559 U.S. 280, 290 (2010)). I apply these considerations here.

The United States Courts of Appeals for the Second and Ninth Circuits have held that the § 1153(h)(1) age calculus is applicable to the determination of the age of an alien under § 1151(f)(2). ***Cuthill v. Blinken***, 990 F.3d 272, 274 (2nd Cir. 2021); ***Tovar v. Sessions***, 882 F.3d 895, 896 (9th Cir. 2018). The plaintiffs ask this court to adopt the rationales of ***Cuthill*** and ***Tovar***.

After examining the text of the relevant statutory provisions, the ***Cuthill*** court found "this is not a case that can be conclusively resolved on the plain text alone." *Id*. at p. 282. The ***Tovar*** court found "the text of § 1151(f)(2), standing alone, does not say which age controls . . . ." ***Tovar***, 882 F.3d at 900. As a result, both courts examined the purpose of the CSPA, the structure of the CSPA, and the interrelationship between and among the relevant CSPA provisions. With that examination, both courts found the § 1153(h)(1) age calculus is applicable to the determination of the age of an alien under § 1151(f)(2) even though neither of these subsections say that specifically.

### 1. Plain Language

In the CSPA, Congress provides at least two, and maybe more, methods for modifying the chronological age of a visa applicant for certain provisions in the CSPA. First, § 1153(h)(1) reduces the chronological age of an applicant by the number of days

in which the relevant petition was pending.  Second, in § 1151(f)(1), Congress provided that the relevant age determination is "made using the age of the alien on the date on which the petition is filed."  Section 1151(f)(2), the provision at issue here, is immediately adjacent to § 1151(f)(1).  In § 1151(f)(2), Congress provided another means of determining age.  Explicitly, § 1151(f)(1) provides that its alternative calculation of age does not apply in § 1151(f)(2).  Rather, § 1151(f)(2) provides a different measure of age, "the age of the alien on the date of the parent's naturalization."  In writing the CSPA, Congress was ready, willing, and able to provide various measures of age for various purposes.

 Section 1153(h)(1) and § 1151(f)(2)(1) do not cross reference each other.  Yet these two provisions of the CSPA, and many other provisions, are so filled with cross-references it makes one's head spin.  Undoubtedly, Congress was ready, willing, and able to provide multiple statutory cross references in the CSPA. However, it did not cross reference § 1153(h)(1) to § 1151(f)(2) or vice versa.

Particularly in the context of the alternative age calculations provided in the CSPA and the lack of cross referencing supporting the view of the plaintiffs, I find that "the age of the alien on the date of the parent's naturalization" is quite plain and simple. As Congress wrote § 1151(f)(2), it had in its drafting quiver the ready ability to refine that age calculation in myriad ways.  Instead, it chose to use the plain and simple phrase at the end of § 1151(f)(2).

Some might say this interpretation of the final phrase of § 1151(f)(2) interprets that phrase in isolation, as opposed to in the context of § 1151 and the CSPA generally. When deciding whether statutory language is plain, a court must read the words in their

context and with a view to their place in the overall statutory scheme. The duty of a court construing a statute is "to construe statutes, not isolated provisions" of statutes. *Id*., p. 486 (quoting *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010)).  Below, I consider whether the context of § 1151 and the context of the CSPA make this plain and simple phrase ambiguous.  In this case, I find that context does not render ambiguous the plain and simple final phrase of § 1151(f)(2).

### 2.  Context - Purpose & Structure of the CSPA

I examine this issue to ensure that, in concluding that the relevant language is plain and simple, "I have read the [key words of § 1151(f)(2)(1)] in their context and with a view to their place in the overall statutory scheme."  *King*, 576 U.S. 486.

> The CSPA was motivated by bipartisan frustration with the fact that children were losing out on visas due to years-long processing delays. The legislation was co-sponsored by representatives of both major parties, passed the House of Representatives by a unanimous 416-0 vote, passed unanimously in the Senate Judiciary Committee after the addition of an amendment, passed the Senate by a unanimous voice vote, passed the House again by a unanimous voice vote, and signed into law by President George W. Bush. Senators and House members of both parties spoke in support of the legislation, and all of them focused on the same theme: Children should not lose their coveted status due to agency processing time.

*Cuthill v. Blinken*, 990 F.3d 272, 284 (2nd Cir. 2021).  No doubt, in passing the CSPA, Congress sought to reduce or eliminate the phenomenon of children aging out on their coveted status as visa applicants under 21 years of age.

Having found that the meaning of the final phrase of § 1151(f)(2)(1) cannot be determined "on plain text alone," the *Cuthill* court examined the context of the key language and the place of that language in the overall statutory scheme.  *Id*., p. 281.

The *Cuthill* court provides a detailed and understandable description of the interrelationship between various CSPA sections, including § 1151(f)(2)(1), related to beneficiaries, like Mr. Jimenez, who are classified as the unmarried child of a LPR in the F2A visa category whose status later changes when the parent of the beneficiary lis naturalized as a U.S. citizen. *Cuthill*, 990 F.3d at 279-281.  Ultimately, the *Cuthill* court found "while no one will ever accuse the CSPA of being reader-friendly, there is still a clear textual path — albeit a circuitous one — leading from § 1151(f)(2) to § 1153(h)(1)."  *Id*. at 280.

The *Cuthill* opinion provides a detailed and understandable description of the scheme, structure, and purposes of the CSPA.  *Id*. at 281-285.  The court found

> (t)hree core structural principles permeate the CSPA and the family-based visa scheme: (1) bureaucratic processing time should not count against child beneficiaries' ages; (2) sons and daughters of citizens receive preference over sons and daughters of LPRs; and (3) minor children receive preference over adult sons and daughters.

*Id*. at 281.  Based on its conclusion that the meaning of the final phrase of § 1151(f)(2) cannot be determined on the plain text alone, the *Cuthill* court assessed the context of the language and its place in the overall statutory scheme.  Ultimately, the *Cuthill* court held that "§ 1151(f)(2) incorporates the basic age-reduction formula - *i.e.*, the notion that you take the beneficiary's current age and deduct processing time."  *Id*. at 281.  The *Cuthill* court held § 1151(f)(2) incorporates the age reduction formula of § 1153(h)(1).  "It is this concept that § 1151(f)(2) incorporates when it refers to the age of an F2A beneficiary."  *Id*. at 283.  This reading of § 1151(f)(2), the court found, is "more consistent with the CSPA's overall scheme and structure than the alternative proposed by the government."  The alternative reading, the court concluded, "turns the

CSPA on its head, contravenes three core features of our nation's family based visa scheme, and yields the bizarre result of penalizing people for becoming U.S. citizens." *Id*. 283-284.[3]

I appreciate the detailed analyses of both the ***Cuthill*** and ***Tovar*** courts but, respectfully, I must disagree.  Even in the context of the purpose, structure, and general principles of the CSPA, which were well described in ***Cuthill*** and ***Tovar***, the plain and simple phrase "using the age of the alien on the date of the parent's naturalization" is not rendered ambiguous.  The context of § 1151 and the CSPA shows Congress chose to provide various measures of age for certain provisions of the CSPA, including a measure of age specific to § 1151(f)(2).  The context of § 1151 and the CSPA shows Congress chose to provide myriad cross-references in the CSPA but chose not to cross reference between § 1153(h)(1) and § 1151(f)(2)(1).  These facts are telling.

No doubt, the ***Cuthill*** court was correct that the CSPA reflects certain general principles and goals, such as: "(1) bureaucratic processing time should not count against child beneficiaries' ages; (2) sons and daughters of citizens receive preference over sons and daughters of LPRs; and (3) minor children receive preference over adult sons and daughters." ***Cuthill***, 990 F.3d at 281.   In some notable ways, application of the plain language of the final phrase of § 1151(f)(2) is contrary to these general principles and goals.  Yet the CSPA is filled with varied categories of petitioners and applicants who, depending on a variety of different circumstances, receive significantly

---

[3]  The plaintiffs claim the holding in ***Tovar*** is binding on the defendants because the petition of Ms. Dekovic was approved by the USCIS California Service Center, which is located within the ninth circuit.  I disagree.  The re-classification challenged by the plaintiffs was done by the NVC, a creature of the Department of State.  According to the complaint, both of those entities are located in Washington D.C.

different treatment.  Particularly in the context of the detailed CSPA, I find it improper to impose a judicial interpretation of the plain and simple final phrase of § 1151(f)(2), thus changing the meaning of that plain and simple phrase.  Rather, I find that this plain and simple statutory language, considered alone and in context, must be enforced according to its terms.

## V.  CONCLUSION

As used in § 1151(f)(2), the phrase "the age of the alien on the date of the parent's naturalization" is plain and simple.  Considering this plain and simple statutory language in the context of § 1151 and the CSPA overall does not make this plain and simple phrase ambiguous.  This plain and simple language must be enforced according to its terms.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Plaintiff's Motion for Summary Judgment on Administrative Procedure Claims and Request for Oral Argument** [#29], read as an opening brief in this appeal under the Administrative Procedure Act, is denied;

2.  That under Fed. R. Civ. P. 12(b)(1), the claims of the plaintiffs against the following defendants are dismissed for lack of standing and, thus, lack of subject matter jurisdiction: Tracy Tarango, Alejandro Mayorkas, Merrick Garland, and Ur Mendoza Jaddou;

3.  That the re-classification of the approved I-130 petition of Ms. Dekovic undertaken by the National Visa Center and the Department of State is affirmed;

4.  That judgment shall enter in favor of the defendants and against the plaintiffs: (A) dismissing the claims against Tracy Tarango, Alejandro Mayorkas, Merrick Garland,

and Ur Mendoza Jaddou under Fed. R. Civ. P. 12(b)(1); and (B) affirming the re-classification of the approved I-130 petition of Ms. Dekovic undertaken by the National Visa Center and the Department of State;

     5. That the defendants are awarded their costs to be taxed by the clerk in the time and manner prescribed by FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

     6.  That this case is closed.

     Dated September 30, 2024, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge